```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

HAROLD HALL,

                              Petitioner,

       -vs-

CHRISTOPHER MILLER,
Superintendent,

                              Respondent.

**No. 1:15-CV-06017 (MAT)**
**DECISION AND ORDER**

_____

## I. Introduction

Proceeding *pro se*, Harold Hall ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered on October 4, 2010, in Chautauqua County Court (Ward, J.), following a jury verdict convicting him of first degree kidnapping (N.Y. Penal Law § 135.25(2)(a)), second degree assault (N.Y. Penal Law § 120.05(2)), and aggravated criminal contempt (N.Y. Penal Law § 215.52).

## II. Factual Background and Procedural History

By indictment of a Chautauqua County grand jury, petitioner was charged with first degree kidnapping (N.Y. Penal Law § 135.25(2)(a)), second degree kidnapping (N.Y. Penal Law § 135.20), second degree assault (N.Y. Penal Law § 120.05(2)), and aggravated criminal contempt (N.Y. Penal Law § 215.52), in connection with the May 2009 kidnapping of his wife, Julie Hall.

Petitioner was tried on these charges at a jury trial which commenced September 13, 2010, before Chautauqua County Judge John T. Ward. At trial, Mrs. Hall testified that as of May 2009, she had commenced separation proceedings against her husband as a result of his history of domestic abuse against her and their children. Mrs. Hall consulted a legal aid attorney, who drafted a separation agreement and sent it to petitioner in the spring of 2009. On May 12, 2009, the date of the incident, an order of protection had been issued by Chautauqua County Family Court and was in place against petitioner in favor of Mrs. Hall and their daughter, Bethany.

At about 5:00 p.m. on May 12, 2009, petitioner learned of Mrs. Hall's whereabouts from their son. Petitioner, who was driving a pickup truck, caught up with Mrs. Hall, who was driving a Dodge Neon. Petitioner rear-ended petitioner's vehicle twice before she ultimately pulled over and ran out of her car, toward an individual riding a lawnmower in a field. Petitioner followed Mrs. Hall on foot, caught up with her, and proceeded to beat her multiple times with a hammer. He then dragged her by the hair back to his pickup truck and forced her to get in. Petitioner then drove the two, through the night into May 13, 2009, to Highland County, Ohio. During the course of the drive, which included several stops, petitioner threatened Mrs. Hall with death should she attempt to escape.

Police eventually tracked down petitioner's and Mrs. Hall's whereabouts, and petitioner was arrested on the morning of May 13, 2009 by Highland County police. Mrs. Hall was taken to a local hospital, where she was treated for various injuries including broken ribs and bruising over most of her body. Eight eyewitnesses, in addition to Mrs. Hall, testified to witnessing portions of petitioner's pursuit of Mrs. Hall's vehicle and his assault upon her.

On May 15, 2009, petitioner was transported from Ohio to Chautauqua County by Sergeant Investigator Paul Gustafson and Officer Chris DePonceau of the Lakewood-Busti police department. During the ride, which lasted approximately six hours, petitioner made several spontaneous statements, including statements to the effect that "this all started because his family had basically given up on him," "he knew what he was facing, [and] that he had made a mistake." Doc. 6-7 at 101-02.

The jury convicted petitioner of first degree kidnapping, second degree assault, and aggravated criminal contempt. On October 4, 2010, Judge Ward sentenced petitioner to an indeterminate term of 25 years to life on the kidnapping count, a determinate term of seven years with three years post-release supervision on the assault count, and an indeterminate term of two and one-third to seven years on the contempt count, all sentences to run concurrently.

Plaintiff filed a counseled direct appeal to the New York State Supreme Court, Appellate Division, Fourth Department, asserting various claims including ineffective assistance of counsel and violation of his Fifth Amendment right against self-incrimination. The Fourth Department unanimously affirmed the conviction, and the New York State Court of Appeals denied leave to appeal. See People v. Hall, 106 A.D.3d 1513 (4th Dep't 2013), lv denied, 22 N.Y.3d 956.

Petitioner filed a *pro se* motion to vacate the judgment of conviction pursuant to N.Y. Criminal Procedure Law ("CPL") § 440.10, contending that his Sixth Amendment right to confrontation was violated by various alleged errors during the trial. Judge Ward denied the motion on the basis that petitioner's record-based claims should have been raised on direct appeal. The Fourth Department denied leave to appeal, and subsequently denied petitioner's motion for reargument.

**D.   The Federal Habeas Proceeding**

This timely habeas petition followed, in which petitioner claims that (1) trial counsel was ineffective for failing to (a) move for a trial order of dismissal in more specific terms, (b) waiving a pretrial Ventimiglia hearing regarding petitioner's prior bad acts (see People v. Ventimiglia, 52 N.Y.2d 350 (1981)), and (c) waiving a pretrial Sandoval hearing regarding petitioner's prior convictions in the event that petitioner testified (see

4

People v. Sandoval, 34 N.Y.2d 371 (1974)(2)); (2) his Sixth Amendment right to confrontation was violated when (a) Mrs. Hall's medical records were allowed into evidence without testimony from the physician who created the records and (b) Mrs. Hall was allowed to testify regarding the records with reference to knowledge she obtained as a nurse; and (3) his Fifth Amendment right against self-incrimination was violated during the transport from Ohio to New York.

Respondent contends that petitioner's claims lack merit. Respondent also asserts that petitioner's Confrontation Clause claim is barred on adequate and independent state law grounds and that petitioner's ineffective assistance claim is partially unexhausted.

### III. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Hall's petition, which was filed in 2013. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury, 316 F.3d 103, 106 (2d Cir.2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's adjudication of the petitioner's claim on the merits is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or involved an "unreasonable determination of the facts" in light of the evidence presented, 28 U.S.C. § 2254(d)(2). The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." Kruelski, 316 F.3d at 106.

**IV. Grounds Asserted in the Petition**

    **A.   Ineffective Assistance of Counsel (Ground One)**

Plaintiff contends that his trial counsel was ineffective for failing to move for a trial order of dismissal on one of the felony charges, and for waiving pretrial Ventimiglia and Sandoval hearings. Respondent counters that these claims are meritless, and that petitioner's claim as to the Sandoval hearing is procedurally defaulted. To the extent that petitioner's Sandoval claim was not clearly presented in federal terms to the state court, this Court need not determine whether it was adjudicated on the merits, thereby triggering AEDPA review, because the claim fails even if the Court applies the less deferential, pre-AEDPA standard. See Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006).

To establish ineffective assistance of counsel, a defendant first must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and second, that "there is a reasonable probability that, absent the errors [by counsel], the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, 466 U.S. 668, 687, 695 (1984). Under Strickland, the Court is required to consider alleged errors by counsel "in the aggregate." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

In this case, counsel actively participated in all stages of the trial, presenting a cogent and capable defense by making appropriate motions and objections, performing effective cross-examination of witnesses both at the pretrial and trial stages, and presenting reasonable opening and closing arguments. The record thus establishes that, in the aggregate, trial counsel's representation was effective. See Harrington v. Richter, 562 U.S. 86, 90 (2011) ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."); United States v. DiPaolo, 804 F.2d 225, 234-35 (2d Cir. 1986) (holding that defendants were not denied effective assistance of counsel where counsel appeared well-prepared and demonstrated good understanding of the facts and legal principles involved in case). Indeed, the Fourth Department specifically found that, as to petitioner's ineffective assistance claim raised on

direct appeal, "the evidence, the law, and the circumstances of [this] particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." Hall, 106 A.D.3d at 1514 (quoting People v Baldi, 54 N.Y.2d 137, 147 (1981)).

Hall's individual theories in support of his ineffective assistance of counsel claim likewise fail under the "highly deferential" standard laid out in Strickland. 466 U.S. at 689. Petitioner argues that his trial counsel erred in failing to specifically move for dismissal based on insufficiency of the evidence as to the kidnapping in the second degree count. However, the Fourth Department specifically found that, although trial counsel's nonspecific insufficiency motion did not preserve the issue for review, petitioner's "contention [that the verdict was based on insufficient evidence was] without merit." Hall, 106 A.D.3d at 1514. This finding was proper, and trial counsel was not ineffective for failing to assert a meritless motion. See Aparicio v. Artuz, 269 F.3d 78, 88, 99 (2d Cir. 2001).

Petitioner also claims that trial counsel was ineffective for waiving a Ventimiglia hearing, which would have addressed the People's admission of evidence of petitioner's prior bad acts. Petitioner raised this argument on direct appeal, but as noted above, the Fourth Department found that trial counsel provided meaningful representation. Evidence of petitioner's prior bad acts,

which included evidence of past incidents of domestic abuse and threats to kill Mrs. Hall, was relevant to show motive and intent. See, e.g., People v. Westerling, 48 A.D.3d 965, 966 (3d Dep't 2008) ("Prior bad acts in domestic violence situations are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant's intent, motive, identity and absence of mistake or accident[.]"). Counsel cannot be faulted for waiving a hearing on a motion which would have failed. See Harvey v. Portuondo, 2002 WL 2003210, *8 (E.D.N.Y. Aug. 5, 2002) (holding that petitioner's argument that appellate counsel should have sought reversal on the ground that Ventimiglia hearing should have been held was "simply absurd," because "[a] motion to preclude [evidence of past domestic abuse and threat to do the crime ultimately charged], which plainly was admissible to prove petitioner's motive and intention to commit the crime, would have been frivolous").

Finally, petitioner argues that trial counsel should have sought a Sandoval hearing regarding petitioner's prior convictions in the event that petitioner testified. As respondent points out, the record makes clear that counsel reserved the right to conduct a Sandoval hearing if the petitioner chose to testify, which he did not. Thus, counsel did not in fact fail to request the hearing; rather, petitioner chose not to testify. Moreover, petitioner has

not shown that counsel's reservation regarding the Sandoval hearing somehow influenced him not to testify. See, e.g., Jackson v. Burge, 2009 WL 10221717, *5 (W.D.N.Y. Apr. 8, 2009) ("Petitioner has completely failed to show how trial counsel's withdrawal of the Sandoval request interfered with his right to testify, let alone affected his decision about testifying."). This claim therefore lacks merit.

### B.    Confrontation Clause (Grounds Two and Three)

Petitioner contends that his rights under the Confrontation Clause were violated when Mrs. Hall's medical records were admitted into evidence at trial, despite the fact that the doctor who prepared the records did not testify, and when Mrs. Hall testified regarding the records based on knowledge obtained in her occupation as a nurse.

Petitioner did not raise these grounds in his direct appeal, but raised them later in his *pro se* CPL § 440.10 motion. In denying his motion, County Court specifically relied upon CPL § 440.10(2)(c), holding that the claims were record-based and could have been raised on direct appeal. See Doc. 6-5, at S.R. 573. This ground for denial of petitioner's motion constitutes a procedural bar to habeas relief because it is an adequate and independent state law ground. See, e.g., Acevedo v. Lempke, 2012 WL 360276, *12 (S.D.N.Y. Feb. 3, 2012 ("A state court's rejection of a motion to vacate pursuant to 440.10(2)(c) is an adequate and independent

state ground sufficient to preclude review of the claim by way of a writ of habeas corpus.").

### C. Fifth Amendment (Ground Four)

Petitioner claims that his Fifth Amendment right against self-incrimination was violated during his transport by police from Ohio to New York, in which he made various statements to Sergeant Investigator Gustafson and Officer DePonceau. Petitioner claims (and respondent does not disagree) that he had invoked his right to counsel, but that the "officers could see plainly that [he] was emotionally compromised and should have realized that the endless 'conversation' would elicit admissions." Doc. 1 at 8.

Statements made during the transport were the subject of a pretrial Huntley hearing. See People v. Huntley, 15 N.Y.2d 72 (1965). At the hearing, Sergeant Gustafson testified that Ohio deputies had informed him that petitioner had invoked his right to counsel. Gustafson testified that he did not question petitioner at any point on the trip, but that petitioner made several spontaneous statements in the course of "numerous conversations . . . [relating to] anything from NASCAR to the fact that it didn't have to be this way." Doc. 6-6 at 81. These comments included statements to the effect that petitioner's "family had failed him," that "he knew what he was facing [and that] what he had done was very wrong," and a comment at one point that he would plead to the charges. Id. Gustafson testified that these statements were not made in response

to any questioning, and that they were not the results of threats or promises.

Following the Huntley hearing, County Court denied petitioner's motion for suppression of the statements, holding that "[a]ny statements made by the defendant were spontaneous and not the result of any intentional police interrogation." Id. at 134. The Fourth Department affirmed that finding, holding that "County Court properly determined that those statements were admissible because they were not '"provoked, induced [or] encouraged by police conduct or interrogation" . . . , but were made voluntarily and spontaneously in the course of a dialogue initiated and continued by defendant[.]'" Hall, 106 A.D.3d at 1513 (quoting People v Johnson, 277 A.D.2d 702, 706 (2000), lv denied 96 N.Y.2d 831 (2001)).

The findings by County Court and the Fourth Department constitute factual findings, which petitioner bears the burden of rebutting by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). In this case, petitioner has come forward with no evidence to suggest that the statements he made to police were anything but spontaneous and voluntary, as established at the Huntley hearing and as found by County Court and the Fourth Department. Plaintiff has thus failed to meet his burden under § 2254(e)(1), and the factual findings are presumed correct under AEDPA. See, e.g., Whyte v. Brown, 2011 WL 7100558, *17-18 (S.D.N.Y.

May 3, 2013) (holding that voluntariness of statements was established where it "was fully developed during the <u>Huntley</u> hearing"), report and recommendation adopted, 2012 WL 234424 (S.D.N.Y. Jan. 26, 2012).

## CONCLUSION

For the foregoing reasons, petitioner's request for writ of habeas corpus is denied, and the petition (Doc. 1) is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Clerk of the Court is requested to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 22, 2015
         Rochester, New York.